UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:21-cr-00193-JPH-MJD |
| | ) | |
| ALESHALIA BOSS, | ) | -04 |
| RICK P. COLEY, | ) | -07 |
| DAVID K. DUGGAR, | ) | -11 |
| | ) | |
| Defendants. | ) | |

**ORDER OVERRULING OBJECTION TO
GOVERNMENT'S NOTICE REGARDING EXPERT WITNESSES**

The government has given Defendants notice of its intent to call twelve expert witnesses at trial. Dkt. 859; dkt. 1064. Defendants Rick Coley and David Duggar object to five of those experts, arguing their testimony should be excluded because they are not qualified to testify under Federal Rule of Evidence 702. Dkts. 873, 875. For the reasons that follow, that objection is **OVERRULED**. Subject to the government establishing at trial the foundational prerequisites summarized in its expert notice and supplement, the five witnesses whose opinions are challenged by Mr. Coley and Mr. Duggar shall be allowed to testify as experts at trial.

**I.
Facts and Background**

Three defendants are set for trial on January 17, 2023, facing allegations of drug and firearm offenses. *See* dkt. 762 (second superseding indictment). The government filed its notice regarding expert witnesses it intends to call at

1

trial, dkt. 859.  After amendments to provisions of the Federal Rules of Criminal Procedure that govern expert witness disclosure became effective in December 2022, the government filed an amended expert witness notice.  Dkt. 1064.  *See* Fed. R. Crim. P. 16(a)(1)(G)(iii) (requiring the government's expert witness disclosures to contain "a complete statement of all opinions that the government will elicit from the witness," "the bases and reasons for them," "the witness's qualifications," and a list of all other cases the witness has testified at in the last four years).

    For each expert witness, the government's amended disclosure sets forth a summary of: (i) the witness's education, training, and relevant experience; (ii) each topic of the witness's testimony; and (iii) cases in which the witness has testified within the last four years.  *See* dkt. 1064.  For example, the government's disclosure for DEA Special Agent Matthew Holbrook includes a copy of his curriculum vitae, summarizing his qualifications, dkt. 1064 at 6 ¶ 1.L; dkt. 1064-1, and lists cases in which he has testified during the previous four years, dkt. 1064 at 6 ¶ 1.M.  The disclosure also enumerates each topic of Agent Holbrook's expert testimony, dkt. 1064 at 2–6 ¶¶ 1.A–K.  And for each topic, the disclosure contains a summary of Agent Holbrook's expert testimony, for example:

> Agent Holbrook will testify that methamphetamine is a synthetic drug that is manufactured in laboratories. Smaller methamphetamine laboratories exist in the United States, but larger "super labs" exist in Mexico that can manufacture up to 100 kilograms of methamphetamine in one cooking session. The vast majority of the methamphetamine sold in the United States comes from Mexican methamphetamine

>> laboratories due to the production ability of these laboratories.

Dkt. 1064 at 2 ¶ 1.A. The government's 26-page notice follows the same format for each designated expert witness. *See id.*

Mr. Coley and Mr. Duggar objected to the government's original notice, dkts. 873; 875. The government filed a response to the objection, dkt. 895, and later a supplemental response, dkt. 1056.

## II.
## Applicable Law

Before admitting expert testimony, "the district court must evaluate: (1) the proffered expert's *qualifications*; (2) the *reliability* of the expert's methodology; and (3) the *relevance* of the expert's testimony." *Gopalratnam v. Hewlett-Packard Co.*, 877 F.3d 771, 779 (7th Cir. 2017) (emphasis in original); *see also* Fed. R. Evid. 702. While experts of a scientific nature may need to point to theories, techniques, or peer-reviewed publications to establish reliability, "[i]n other cases, the relevant reliability concerns may focus upon personal knowledge or experience." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 149–50 (1999) (referencing examples of experts in drug terms, handwriting analysis, and criminal *modus operandi*).

District judges have a duty to ensure that Rule 702's requirements are met before allowing a jury to hear expert testimony, that is, testimony based on a witness's training and experience rather than their personal knowledge of the facts in the case before the court. *See Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 589 (1993); *Kumho Tire Co.*, 526 U.S. at 147–49; *United States v.*

3

*Moore*, 521 F.3d 681, 683 (7th Cir. 2008). While always required to perform this gatekeeping function, district judges "are not required to undertake each step of the Rule 702 analysis" when no party requests it. *United States v. Jett*, 908 F.3d 252, 266 (7th Cir. 2018).

### III.
### Analysis

Mr. Coley and Mr. Duggar object to the proposed testimony of five witnesses who the government has designated as experts—Matthew Holbrook, Kerry Inglis, Jonathon Willey, Kelly Stewart, and Benjamin LaBuz. Dkts. 873, 875. The government has designated each of these witnesses to provide expert testimony regarding various aspects of drug trafficking:

- "Agent Holbrook will testify about drug trafficking patterns, common types of drug paraphernalia, and the appearance, use, effect, and street value of methamphetamine, heroin, and fentanyl."

- "Agent Inglis will testify about similar matters as Agent Holbrook, as well as the identification of drug code language used by participants in the charged conspiracy."

- "Agent Stewart, Detective Willey, and Agent LaBuz will testify concerning common types of drug paraphernalia and the use of firearms in the drug trafficking business."

Dkt. 1056 at 2. The government argues that each witness is qualified to testify as an expert and that their expert testimony satisfies Federal Rule of Evidence 702's reliability requirement. *Id.* at 3–6.

Mr. Coley and Mr. Duggar argue that, with respect to each of these five witnesses, the government has failed to provide the defense and the Court with

4

enough information to conduct its analysis under Rule 702 and *Daubert*—namely, determining whether (1) the witness is qualified; (2) the expert's methodology is scientifically reliable; and (3) the witness will assist the trier of fact to understand the evidence or to determine a fact in issue. Dkt. 873 at 3 (citing *Gopalratnam*, 877 F.3d at 779).

*Qualifications:* The government's disclosure contains sufficient information to demonstrate that each of these five law enforcement officers is qualified through their education, experience, and training to offer "responsible opinion testimony." *See Tuf Racing Prods., Inc. v. Am. Suzuki Motor Corp.*, 223 F.3d 585, 591 (7th Cir. 2000); *Moore*, 521 F.3d at 684 ("We have held that an agent's field experience can provide 'specialized knowledge' that supports expert testimony."). For example, the government's disclosure states that Benjamin LaBuz has been an FBI Special Agent since 2013; has received training from the FBI in the enforcement of laws concerning controlled substances; has investigated drug trafficking offenses; and is familiar with investigative techniques used in drug trafficking investigations. Dkt. 1064 at 16 (Gov't's Am. Notice ¶ 9). The notice summarizes the specific topics within the field of drug trafficking about which Agent LaBuz will testify as an expert: violations of drug trafficking laws; firearms are commonly used by drug dealers to protect themselves, their currency, and their controlled substances; digital scales are commonly used to weigh controlled substances for distribution; lactose is commonly used to cut fentanyl for distribution; blenders are

5

commonly used to cut fentanyl for distribution; and that syringes are commonly used to consume controlled substances. *Id.* at 15–16.

Agent LaBuz's résumé contains sufficient information to establish his qualifications based on his education, training, and experience, to testify about these topics. *See, e.g., United States v. Tingle*, 880 F.3d 850, 854 (7th Cir. 2018) (holding a 16-year DEA agent was qualified to testify in a drug distribution case). The same is true of the résumés of Agents Holbrook, Inglis, Stewart, and Detective Willey. *Id.; Moore*, 521 F.3d at 684.[1]

*Reliability*: Expert testimony about drugs and methods used by drug dealers in drug trafficking "is reliable when based both on significant law enforcement experience and an application of the case's facts." *United States v. Johnson*, 916 F.3d 579, 587 (7th Cir. 2019). The government's disclosure establishes that each of the five challenged experts have significant law enforcement training and experience in drug trafficking investigations. *See* dkt. 1064 at 1–17 (Gov't's Am. Notice ¶¶ 1–2, 4, 6, 9). For law enforcement experts such as these, "experience is the prominent, if not sole, basis for a great deal of reliable testimony." Fed. R. Evid. 702 (Advisory Committee Notes to 2000

---

[1] Mr. Coley and Mr. Duggar also imply that Agent Inglis's proffered testimony about the "effect of methamphetamine and heroin" is scientific, and thus outside of her qualifications. Dkt. 873 at 7. To the extent Agent Inglis's testimony remains in the bounds discussed in the relevance section, *infra*, her near-decade experience as a federal law-enforcement official is sufficient to qualify her to testify about this issue, assuming she discusses only the general effect of these drugs, based on her observations and experience. *See Gayton v. McCoy*, 593 F.3d 610, 617 (7th Cir. 2010) ("The question we must ask is not whether an expert witness is qualified in general, but whether h[er] qualifications provide a foundation for [her] to answer a specific question." (cleaned up)).

Amendments); *see also Moore*, 521 F.3d at 684. The proffered expert testimony of these witnesses has "a reliable basis in the knowledge and experience of" drug trafficking and therefore satisfies the reliability requirement. *Kumho Tire*, 526 U.S. at 150; *see also* dkt. 1056 at 4–6 (citing numerous Seventh Circuit cases that have found expert testimony regarding various topics relating to drug trafficking to be reliable based on the testifying law enforcement officers' experience). Therefore, Mr. Coley and Mr. Duggar's insistence on "peer-reviewed articles" and "certifications," *see* dkt. 873 at 11, demands too much, going beyond what's required. *See, e.g., Johnson*, 916 F.3d at 587–88 (holding that an experienced federal agent's expert testimony on drug trafficking was reliable).

*Relevance:* The proffered testimony of these five witnesses regarding drug trafficking is relevant. Most people who serve on a jury do not have personal experience dealing drugs and are not otherwise knowledgeable about drug trafficking. *See United States v. Brown*, 7 F.3d 648, 651–52 (7th Cir. 1993). Jurors, by and large, do not know, for example, what methamphetamine looks like, how it is transported and redistributed, its street value, the amount of a typical dosage unit, or "tools of the trade" commonly utilized in drug trafficking. *See id.* Therefore, expert testimony regarding these and other topics related to drug trafficking can help the jury understand and evaluate the evidence of drug trafficking activities that it will see and hear throughout the trial. *See Kumho Tire*, 526 U.S. at 148–49; *Brown*, 7 F.3d at 652 ("The 'helpfulness' of expert testimony under Rule 702 is determined by evaluating the present state of

7

knowledge about the subject of the testimony, in light of the issue that must be determined and the facts the jury must consider in reaching its decision.").

Mr. Coley and Mr. Duggar argue that the proffered testimony of FBI Special Agent Kerry Inglis will be unhelpful to the jury. Dkt. 873 at 7. The government's notice states that Agent Inglis will testify about (1) "the appearance, street value, use, and effect of methamphetamine, heroin, and fentanyl"; (2) "common types of drug paraphernalia"; (3) drug code language; and (4) quantities of drugs that are consistent with personal use or distribution. Dkt. 1064 at 7–9 (Gov't's Am. Notice ¶ 2.A–D).

Mr. Coley and Mr. Duggar argue that Agent Inglis's "testimony, while perhaps generally informative to some, does not assist the trier of fact in this case." Dkt. 873 at 7. But the Seventh Circuit has consistently deemed expert testimony like Agent Inglis's to be helpful to the lay juror. *See, e.g., Brown*, 7 F.3d at 651–52 (citing cases, including ones that found helpful testimony about "quantity, purity, usual dosage units and street value of narcotics" and "paraphernalia specifically associated with the manufacture or distribution of illegal drugs"); *United States v. York*, 572 F.3d 415, 423 (7th Cir. 2009) (finding an FBI agent's expert testimony about the meaning of code words to be helpful).

However, one element of Mr. Coley and Mr. Duggar's objection warrants further discussion. They take issue with Agent Inglis's proposed testimony about the "effect of methamphetamine, heroin, and fentanyl," arguing there's no dispute about this. *See* dkt. 873 at 7. To the extent the effect of these

8

substances has a direct bearing on helpful testimony—*i.e.*, contextualizing code words—it is admissible to familiarize jurors who are "unlikely to be knowledgeable about drug trafficking." *Brown*, 7 F.3d at 652. But the government shall not elicit further testimony about the effect of these drugs without first seeking leave of Court and explaining how such information is helpful to the jury in this case. *Cf. id.*; *see Daubert*, 509 U.S. at 591 ("Expert testimony which does not relate to any issue in the case is not relevant and, ergo, non-helpful.").

## IV.
## Conclusion

Mr. Coley and Mr. Duggar's objection to the government's notice regarding expert witnesses is therefore **OVERRULED**. Dkts. 873, 875. This ruling is subject to the government first establishing at trial the foundational prerequisites summarized in its expert notice, supplement, and response to the objection.

**SO ORDERED.**

Date: 1/5/2023

*James Patrick Hanlon*
James Patrick Hanlon
United States District Judge
Southern District of Indiana

Distribution:

All Electronically Registered Counsel